LATHAM & WATKINS LLP
Colleen C. Smith (SBN 231216)
  colleen.smith@lw.com
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400

Kristin N. Murphy (SBN 268285)
  kristin.murphy@lw.com
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235

*Counsel for Defendants Sable Offshore Corp.,
James C. Flores, and Gregory D. Patrinely*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY JOHNSON, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SABLE OFFSHORE CORP., JAMES C. FLORES, and GREGORY D. PATRINELY,<br><br>Defendants. | Case No. 2:25-cv-06869-SVW-PVC<br><br>**DEFENDANTS SABLE OFFSHORE CORP., JAMES C. FLORES, AND GREGORY D. PATRINELY'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br><u>CLASS ACTION</u><br><br>Judge: Hon. Stephen V. Wilson<br>Hearing Date: February 9, 2026<br>Time: 1:30 p.m. |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ..................................................................................................... 1

    A.    The Opposition Confirms No Falsity ................................................... 1

        1.    No Falsity for Restart Statements (Stmts. 1, 2, 5, 8, 11) ..................................................................................... 1

        2.    No Falsity for Repair & Permit Statements (Stmts. 3, 10, 12-15) ............................................................... 4

        3.    No Falsity for Litigation Opinions (Stmts. 7, 15-18) ..................................................................................... 5

        4.    No Falsity for Hunterbrook Opinion (Stmt. 19) ...................... 6

    B.    The Opposition Confirms No Scienter .................................................. 7

        1.    Plaintiffs Do Not Establish a Core Operations Inference ................................................................................. 8

        2.    Plaintiffs Do Not Plead Knowledge of Contrary Information .............................................................................. 9

        3.    Plaintiffs Do Not Plead Particularized Motive ...................... 9

        4.    The More Compelling Inference is Good Faith ..................... 10

    C.    The Opposition Confirms No Loss Causation ................................... 11

III.    CONCLUSION ............................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Anshen v. Facebook*,
2017 WL 5635021 (C.D. Cal. Oct. 4, 2017) ....................................................9, 11

*Bray v. Rocket Lab USA, Inc.*,
2025 WL 3688815 (C.D. Cal. Nov. 7, 2025) ....................................................7, 8

*Brody v. Transitional Hosps. Corp.*,
280 F.3d 997 (9th Cir. 2002) ............................................................................2

*Bueno v. St. Jude Med., Inc.*,
2013 WL 12142536 (C.D. Cal. Sept. 24, 2013) ..................................................1

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
63 F.4th 747 (9th Cir. 2023) ...........................................................................4, 7

*Glazer Cap. Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ..............................................................................5

*Habelt v. iRhythm Techs., Inc.*,
2022 WL 971580 (N.D. Cal. Mar. 31, 2022) .....................................................11

*Hershewe v. JOYY Inc.*,
2021 WL 6536670 (C.D. Cal. Nov. 5, 2021) ......................................................8

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) .............................................................................12

*In re Daou Sys. Inc.*,
411 F.3d 1006 (9th Cir. 2005) ............................................................................7

*In re Dermtech, Inc. Sec. Litig.*,
2024 WL 4941026 (S.D. Cal. Dec. 2, 2024) ......................................................10

*In re Dermtech, Inc. Sec. Litig.*,
2025 WL 1618193 (S.D. Cal. June 5, 2025) ........................................................3

*In re Herbalife, Ltd. Sec. Litig.*,
2015 WL 12732428 (C.D. Cal. Mar. 27, 2015) ..................................................12

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ........................................................................ 8

*In re PG&E Corp. Sec. Litig.*,
  2025 WL 2781745 (N.D. Cal. Sept. 30, 2025) ................................................. 5

*In re Semtech Corp.*,
  2025 WL 2884810 (C.D. Cal. Oct. 7, 2025) ................................................... 10

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012) .......................................................................... 9

*Loritz v. Exide Techs.*,
  2013 WL 12134142 (C.D. Cal. Dec. 19, 2013) ............................................... 3

*Maeve Inv. Co. v. Teekay Corp.*,
  2017 WL 5158059 (W.D. Wash. Nov. 7, 2017) ............................................... 8

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) .......................................................................................... 2

*Mihaylov v. Tattooed Chef, Inc.*,
  2024 WL 6901294 (C.D. Cal. Dec. 11, 2024) ................................................. 8

*N.M. State Inv. Council v. Ernst & Young LLP*,
  641 F.3d 1089 (9th Cir. 2011) ........................................................................ 9

*Nguyen v. Radient Pharms. Corp.*,
  2011 WL 13141630 (C.D. Cal. Oct. 26, 2011) .............................................. 10

*Okla. Firefighters Pension & Ret. Sys. v. Ixia*,
  50 F. Supp. 3d 1328 (C.D. Cal. 2014) ............................................................ 4

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ........................................................................................ 4

*Petersen v. Stem, Inc.*,
  2024 WL 4602710 (N.D. Cal. Aug. 30, 2024) ................................................. 6

*Prodanova v. H.C. Wainwright & Co.*,
  LLC, 993 F.3d 1097 (9th Cir. 2021) .............................................................. 10

*Rok v. Identiv, Inc.*,
  2017 WL 35496 (N.D. Cal. Jan. 7, 2017) ...................................................... 11

CASE NO. 2:25-cv-06869-SVW-PVC
DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO DISMISS SECOND AMENDED COMPLAINT

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*Rubke v. Capitol Bancorp Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) .................................................................................... 5, 6

*Sneed v. Talphera, Inc.*,
   147 F.4th 1123 (9th Cir. 2025) ....................................................................................... 9

*South Ferry LP v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ......................................................................................... 9

*Stephens v. Maplebear Inc.*,
   2025 WL 1359125 (N.D. Cal. May 9, 2025) ................................................................. 7

*Studen v. Funko, Inc.*,
   2024 WL 2209686 (W.D. Wash. May 16, 2024) ........................................................... 7

*Tapia v. Wells Fargo Bank, N.A.*,
   2015 WL 4650066 (C.D. Cal. Aug. 4, 2015) ................................................................. 5

*Thant v. Rain Oncology Inc.*,
   2025 WL 588994 (N.D. Cal. Feb. 24, 2025) .................................................................. 2

*Webb v. Solarcity Corp.*,
   884 F.3d 844 (9th Cir. 2018) .................................................................................... 9, 10

*Welgus v. Trinet Grp., Inc.*,
   2017 WL 6466264 (N.D. Cal. Dec. 18, 2017) ............................................................... 3

*Yaron v. Intersect ENT, Inc.*,
   2020 WL 6750568 (N.D. Cal. June 19, 2020) ............................................................. 12

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ....................................................................................... 11

**STATUTES**

15 U.S.C. § 78u-4(b)(1) ...................................................................................................... 1

**RULES**

Fed. R. Civ. P. 9(b) .......................................................................................................... 11

17 C.F.R. 240.10b-5(b) ...................................................................................................... 2

## I.    INTRODUCTION

Plaintiffs' Opposition confirms that the Complaint fails to state a claim. Plaintiffs abandon the Complaint's core theory of fraud, conceding that Sable's report that it had "begun flowing oil production" at the beginning of the Class Period was accurate. Plaintiffs also do not respond to multiple, reinforcing arguments explaining why none of the Complaint's alleged misstatements is actionable under established PSLRA authorities. Indeed, Plaintiffs fail to even address more than *thirty* cases Defendants cited, including seventeen published Ninth Circuit opinions.

For scienter, Plaintiffs rely primarily on an argument that scienter is inferred because the statements relate to Sable's "core operations"—a theory the Complaint does not plead—and on generic motive allegations. Courts routinely reject the speculative, abstract scienter arguments Plaintiffs offer.

For loss causation, Plaintiffs agree that they must plead "that the decline in stock price was proximately caused by a revelation of fraudulent activity." Opp. 21. But they do not argue that any fraud was revealed on any date.

## II.    ARGUMENT

### A.    The Opposition Confirms No Falsity

#### 1.    No Falsity for Restart Statements (Stmts. 1-2, 5, 8, 11)

Plaintiffs originally alleged that statements that Sable "restarted production" in May 2025 were false because "Sable had not restarted oil production." ¶¶ 63, 69. Plaintiffs now concede that these statements may be "literally true." Opp. 6. So Plaintiffs pivoted to two theories of falsity that do not appear in the Complaint: that Sable's oil flow was "nothing more than a minor, mandatory test," *id*. 4; and that Sable's statements created a "false impression" that it would "imminently begin selling oil," *id*. 6. Under the PSLRA, which requires the "complaint" to specify "the reason or reasons why the statement is misleading," these new theories are impermissible. 15 U.S.C. § 78u-4(b)(1); *see Bueno v. St. Jude Med., Inc.*, 2013 WL 12142536, at *3 (C.D. Cal. Sept. 24, 2013) ("It is axiomatic that a complaint may

not be amended by briefs in opposition to a motion to dismiss.").

In any event, the new theories also fail on the merits. Plaintiffs source their claim that Sable's oil flow was just a "minor" test to Lt. Governor Kounalakis, who wrote that she was "informed" by her staff that the oil flow was "the result of well-testing procedures." ¶ 72. Even if the Court credited this pleading method, Plaintiffs identify no contradiction with what was disclosed. Sable told investors that it had been "testing wells … throughout May 2025." Ex. 7 at 429. It *also* reported that it "initiated the flow of oil production from six wells" at a rate of "~6,000 barrels of oil per day," *id.*, consistent with the Kounalakis letter, which went on to confirm that Sable had "initiat[ed] … oil flow through the offshore pipeline," ¶ 72.

Plaintiffs also allege that Sable's statements created a "false impression" that it would "imminently begin selling oil." Opp. 6. Plaintiffs cannot explain how statements that Sable initiated oil flow to a storage facility created a misleading impression about the future.[1] The theory has three flaws.

*First*, Plaintiffs would create a disclosure standard under which public companies like Sable cannot report a factual development without discussing a host of additional details about the status of repairs, testing, permits, approvals, and litigation. Opp. 4-5. This is not the law. "[Section] 10(b) and Rule 10b–5(b) do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44-45 (2011); *see Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1005 (9th Cir. 2002) ("Often, a statement will not mislead even if it is incomplete…"). "[S]ilence, absent a duty to disclose, is not

---

[1] By contrast, Statements 4 and 9 are forward-looking statements about Sable's projected oil production and sales timeline. Plaintiffs state, with no analysis, that these and other forward-looking statements are actionable, but they do not dispute that both independent prongs of the PSLRA safe harbor are met for each statement, Mot. 10-12. *See* Opp. 14 n.6 (citing *Thant v. Rain Oncology Inc.*, 2025 WL 588994, at *6 (N.D. Cal. Feb. 24, 2025)). *Thant* did not even address the safe harbor, instead holding that statements about a Phase 3 drug trial were misleading for omitting that the drug did not meet consensus criteria to bypass Phase 2. 2025 WL 588994, at *6. To the extent Plaintiffs meant to analogize to the portion of the May 19 Press Release's *title* about "Anticipated Oil Sales," that relates to Statement 4 in the body of the Press Release and is likewise a protected forward-looking statement.

misleading …" *Loritz v. Exide Techs.*, 2013 WL 12134142, at *1 (C.D. Cal. Dec. 19, 2013) (Wilson, J.) (citation omitted).

*Second*, Plaintiffs do not identify any material information that was concealed. Sable disclosed at the time that it had "testing" to finish and "permits" to obtain, Ex. 7 at 429-30, it disclosed disputes involving the Coastal Commission, Fire Marshal, and Water Board, Ex. 8 at 446-48, 450-52, and once it believed it completed repairs under the Consent Decree, it disclosed that to investors, too, Ex. 7 at 429.

*Third*, even if Sable was "triumphant[]" and "excited" as it spoke about this development and its "prospects for the future," Opp. 4; Ex. 7 at 429, that is not securities fraud. Plaintiffs may contend that the tone was too optimistic given regulatory roadblocks, but they cannot base their claim on a theory that "suggests that 'every General who has lost a battle was making false statements saying that they were going to win the battle.'" *Welgus v. Trinet Grp., Inc.*, 2017 WL 6466264, at *11 (N.D. Cal. Dec. 18, 2017). And Sable never said that it was going to "win the battle." It warned that "initial timing and production estimates" were "for illustrative purposes only" and "inherently uncertain due to a number of factors outside Sable's control." Ex. 7 at 430-431; *see* Ex. 8 at 456 ("no assurance that we will be successful in satisfying the remainder of the requirements"), 459.[2] That commercial restart was later delayed, as warned, is irrelevant.

This is not a case where Plaintiffs and Defendants offer competing interpretations. Opp. 6-7.[3] Viewing the language of the restart statements in context, *see id*. 6, confirms they are not actionable.[4]

---

[2] These disclosures contradict Plaintiffs' baseless accusations that Sable told investors "state and local regulators could be safely ignored," Opp. 1, and merely disclosed "general warnings that the Company's plans might not succeed," *id.* 7.

[3] *See In re Dermtech, Inc. Sec. Litig.*, 2025 WL 1618193, at *4 (S.D. Cal. June 5, 2025) (finding falsity adequately pleaded based on competing "plausible theories about how a reasonable investor would interpret 'broader payer coverage'").

[4] Plaintiffs also do not dispute that documents attached to the Motion are subject to judicial notice or incorporated by reference. Opp. 3 n.2. A number of these contradict the conclusory allegations and drafting errors in the Complaint.

2.      No Falsity for Repair & Permit Statements (Stmts. 3, 10, 12-15)

Plaintiffs argue that Statements 3, 10, and 12-15—about Sable's belief that it had completed repairs required by the Consent Decree and did "permitted" work— are not opinions. But Plaintiffs provide no support for their say-so that these were "not opinions." Opp. 9. They do not contest that opinion statements "reflect the speaker's assessment" of underlying facts and often require the "weighing of competing facts," Mot. 14, 16, which perfectly captures Sable's assessment that it had completed repairs required by a complex legal document, including those that the County confirmed were "authorized by the existing permits" it previously issued.

Plaintiffs do not argue that the opinions were not subjectively believed or that they contained any misrepresented facts. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-91 (2015). Instead, Plaintiffs argue that if these statements are opinions, they are actionable because they did not "'fairly align' with information Defendants possessed at the time they made the statements," purportedly under the third *Omnicare* prong. Opp. 10 (citing *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 771 (9th Cir. 2023)).

For statements that Sable had completed repairs in May (Stmts. 3, 10, 13-15), Plaintiffs offer no analysis of what information contradicted these statements. Plaintiffs repeat that the Fire Marshal said (in *October*) that it "identified" an unmet requirement, Opp. 9, but do not contest that the Complaint fails to plead facts about the state of play when Sable made the statements, Mot. 15. Plaintiffs also concede that the Complaint contains insufficient details about the Fire Marshal letter, which Plaintiffs improperly try to remedy by citing a link to the letter. *See* Opp. 8 n.3; *see also Okla. Firefighters Pension & Ret. Sys. v. Ixia*, 50 F. Supp. 3d 1328, 1350 (C.D. Cal. 2014) ("Plaintiffs cannot utilize the documents to amend the complaint and defeat defendants' motions to dismiss."). Thus, even if Statements 3, 10, and 13-15 are analyzed under falsity standards for non-opinion statements, they come up short.

Plaintiffs focus on Statement 12, that all Sable's work was "fully permitted

and approved." Opp. 9. Their basis for arguing that this was false (or, if it is an opinion, actionable) is repeating the positions of the Water Board and the Coastal Commission—ignoring that for the latter, Sable spoke based on the County's confirmation that "repair work is authorized by the existing permits." Mot. 16 (citing Ex. 4 at 327). But even the allegedly contrary "information Defendants possessed at the time" was disclosed to investors, so it is unclear what Plaintiffs claim was omitted. *See* Ex. 8 at 446-47 (disclosing the Coastal Commission cease and desist order); *id.* at 450 (disclosing the Water Board's notices of violation). *See Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1163 (9th Cir. 2009) (it is "pointless and costly to compel firms to reprint information already in the public domain.").

Plaintiffs rely on inapt cases analyzing statements about compliance with specific laws and regulations, which did not address whether statements were opinions under the *Omnicare* framework. Opp. 9.[5] And none addressed situations like Sable's, where it not only assessed competing facts associated with a complex permitting scheme but also made the bases for its opinions clear to the public.

3.  No Falsity for Litigation Opinions (Stmts. 7, 15-18)

For Statements 7 and 15-18, Plaintiffs mostly paraphrase the Complaint (and make no argument at all about Statement 6).[6] Opp. 10-12. Plaintiffs cite no cases holding that positive comments about ongoing litigation were securities fraud, and fail to address cases where courts dismissed similar statements (including near-identical statements that litigation was "without merit"). Mot. 14, 15 n.6.

Plaintiffs argue in conclusory fashion that if these statements are opinions, the opinions again did not "'fairly align' with information Defendants possessed at the

---

[5] *See, e.g.*, *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 742 (9th Cir. 2008) (specific allegations by SEC that company violated securities laws); *In re PG&E Corp. Sec. Litig.*, 2025 WL 2781745, at *17 (N.D. Cal. Sept. 30, 2025) (regulatory compliance statements were allegedly contradicted by "thousands of violations," and no government agencies told company that it was in compliance with the law).

[6] The Opposition does not address (and thus concedes) that Statements 6 and 7 are puffery. "[A]ny objection to the motion to dismiss" these statements is "waived." *Tapia v. Wells Fargo Bank, N.A.*, 2015 WL 4650066, at *2 (C.D. Cal. Aug. 4, 2015).

time they made the statements" under the third *Omnicare* prong. Opp. 12. Here too Plaintiffs fail to "adequately identify the information they assert did not align with the defendants' representations." *Petersen v. Stem, Inc.*, 2024 WL 4602710, at \*9 (N.D. Cal. Aug. 30, 2024). If it is the court rulings themselves, they were "in the public domain," *Rubke*, 551 F.3d at 1163, for investors to assess.

Statements about the expected impact of the Coastal Commission litigation rulings (Stmts. 15, 17-18) were not misleading because Sable had announced it had already completed its repairs. Mot. 14. Plaintiffs argue that the Coastal Commission rulings also stopped "ongoing maintenance" but fail to plead any outstanding maintenance work or even how maintenance differs from repairs. Opp. 11. As Sable explained in the very statement Plaintiffs challenge, the May 28 preliminary injunction was about "maintenance and repair" work, and "[a]s of this morning, *that work … has been successfully completed.*" ¶ 81 (emphasis added). For the opinion that the June 3 State Waivers TRO would not impact Sable's "*preparations* for restarting the flow of oil," ¶ 81 (emphasis added), the Opposition has nothing to offer except that the accurate statement was "too cute by half." Opp. 11. There is nothing "cute" about examining the text of a statement to determine whether Plaintiffs have plausibly pleaded that it misled investors, and this one did not.

### 4.   No Falsity for Hunterbrook Opinion (Stmt. 19)

Plaintiffs do not challenge that Statement 19—Sable's comment to Hunterbrook that "based upon information provided to us we believe that the alleged recording was either AI generated or otherwise altered"—is a pure opinion statement subject to the *Omnicare* framework. Plaintiffs' Complaint fails to plead with particularity that (1) the speaker did not hold the opinion at the time it was offered, (2) the statement contained an embedded false statement, or (3) the statement omitted a material fact. Mot. 13-14 (citing Stmt. 19), 16 (citing ¶¶ 90-91). Plaintiffs' entire allegation of falsity is that "contrary to Defendants' representations, the Hunterbrook report" was, according to Plaintiffs, "accurate[]." ¶ 91. This allegation

pleads nothing about the unidentified Sable speaker's belief about the alleged recording in the Hunterbrook report and pleads no facts to undercut the speaker's belief that the recording was not authentic.

As with the other opinions, Plaintiffs concede in the Opposition that the Complaint fails to plead facts to support liability under the first or second *Omnicare* prongs. It instead argues the third "omissions" prong is met because the statement "implies that Defendants conducted an investigation" into the recording when they allegedly had not. Opp. 13. But the Complaint pleads no facts as to whether an investigation was conducted, rendering the Opposition pure hypothesis. *See Stephens v. Maplebear Inc.*, 2025 WL 1359125, at *6 (N.D. Cal. May 9, 2025) (rejecting similar omissions theory where plaintiffs have not "pled much about the investigation that Instacart executives did or did not conduct when forming those opinions"). Plaintiffs also suggest that the opinion on the recording was somehow "false" because Sable announced days later that its Board formed a Special Committee to investigate the Hunterbrook report's allegations. Opp. 13. But even if Statement 19 "reflected facts that later proved untrue," about the recording, "'an investor cannot state a claim by alleging only that an opinion was wrong.'" *Studen v. Funko, Inc.*, 2024 WL 2209686, at *15 (W.D. Wash. May 16, 2024) ("[T]he words 'I believe' themselves admit [] that possibility, thus precluding liability for an untrue statement of fact.").

### B.    The Opposition Confirms No Scienter

Plaintiffs misstate the scienter standard and cite law that has been overruled. It is no longer the case that falsity and scienter "are generally strongly inferred from the same set of facts" or that the PSLRA allows a "unitary inquiry." Opp. 14 (citing *In re Daou Sys. Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005)); *see Forescout Techs.*, 63 F.4th at 766 (noting that "the combined approach" in *Daou* "was abrogated by subsequent Supreme Court decisions"). Rather, scienter must be independently pleaded "with particularity 'with respect to *each* act or omission.'" *Bray v. Rocket*

*Lab USA, Inc.*, 2025 WL 3688815, at *2 (C.D. Cal. Nov. 7, 2025).

### 1. Plaintiffs Do Not Establish a Core Operations Inference

Because the Complaint does not allege specific facts showing scienter, Plaintiffs pivot in the Opposition to arguing that scienter may be imputed because the statements at issue concern Sable's "core operations." Opp. 14-16. The Court may disregard this theory because the Complaint does not plead it. *See Hershewe v. JOYY Inc.*, 2021 WL 6536670, at *10 (C.D. Cal. Nov. 5, 2021) (court "need not consider" a "core operations" theory first introduced in the opposition brief).

In any event, "absent some additional allegation of specific information conveyed to management and related to the fraud or other allegations supporting scienter, the core operations inference will generally fall short." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014) (internal quotation marks omitted). Plaintiffs do not argue that the Complaint pleads such allegations. They argue instead that it would be "absurd" to suggest Sable's CEO and CFO lacked knowledge of information that contradicted public statements, because the Santa Ynez Unit was "Sable's only assets" and "determined the fate of the Company." Opp. 15. Courts repeatedly reject an "absurdity" theory merely because a company's existence depends on one product or business line. *See NVIDIA*, 768 F.3d at 1064 (rejecting core operations despite defect in "flagship product"); *Mihaylov v. Tattooed Chef, Inc.*, 2024 WL 6901294, at *7 (C.D. Cal. Dec. 11, 2024) (rejecting theory that company "only had one business segment" so "*everyone* would have been aware of, or recklessly disregarded, *everything* that related to that" segment).

The Complaint is also deficient because it "fails to specify exactly *what* the 'relevant fact' is that it would be absurd to suggest that [] management was unaware of." *Maeve Inv. Co. v. Teekay Corp.*, 2017 WL 5158059, at *5 (W.D. Wash. Nov. 7, 2017). Plaintiffs argue only the Individual Defendants must have known about "repair, maintenance, and regulatory hurdles of the pipelines" and "progress and setbacks in obtaining regulatory approvals" in the six-month Class Period. Opp. 15,

16. The Ninth Circuit rejects allegations of imputed knowledge of far more specific "relevant facts." *See Webb v. Solarcity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018) (no "alleged facts supporting the inference" that an accounting error "was so dramatic that it would be *absurd*" to conclude Defendants "did not know that something was wrong"). Plaintiffs' citations show extreme, specific "relevant facts" not present here. Opp. 15-16 (citing cases alleging, e.g., one of company's three revenue streams collapsed; thousands of regulatory violations that could bankrupt company; important agreement CEO was briefed on, with no core operations). *See also Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1134 (9th Cir. 2025) (core operations applies only where falsity of the challenged statements "is patently obvious").

This Court should reject the "exceedingly rare" core operations theory, *South Ferry LP v. Killinger*, 542 F.3d 776, 786 n.3 (9th Cir. 2008), as it has done in the past, *see Anshen v. Facebook*, 2017 WL 5635021, at *3 (C.D. Cal. Oct. 4, 2017).

### 2. Plaintiffs Do Not Plead Knowledge of Contrary Information

Scienter is sometimes pleaded by specific allegations of contemporaneous reports or data that contradict public statements *and* that Defendants had "access" to. Opp. 16-17 (citing cases). The Court may easily disregard this argument here, because Plaintiffs do not allege what reports or data existed, let alone that any Defendant had access to them. *See also In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 708-709 (9th Cir. 2012) (specific facts that executives made "accounting adjustments"); *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095-96 (9th Cir. 2011) (auditor's knowledge of backdated option). Plaintiffs do not dispute that an executive's title or involvement in operations does not support scienter, or that the Complaint lacks scienter allegations for Patrinely. Mot. 18.[7]

### 3. Plaintiffs Do Not Plead Particularized Motive

A complaint cannot rely on "mere motive and opportunity" but Plaintiffs

---

[7] Plaintiffs also abandon the theory that the Hunterbrook Short Report supports scienter, and have therefore waived that argument.

boldly state "Defendants Had Motive and Opportunity to Commit Fraud." Opp. 17.

Plaintiffs hypothesize an exception to well-established Ninth Circuit law that conducting an equity offering does not show scienter, because they argue that Sable was in "existential cris[i]s." Opp. 18. There is no such exception. Countless cases rejecting theories of scienter based on "routine corporate objectives" also note the importance of a company's stock offering to its ongoing existence. *See Webb*, 884 F.3d at 854 ("successful IPO" was allegedly needed "to generate badly needed cash"); *In re Dermtech, Inc. Sec. Litig.*, 2024 WL 4941026, at *12 (S.D. Cal. Dec. 2, 2024) (offering was "critical to 'ke[ep] the lights on'" and "avoid bankruptcy").

Plaintiffs' citations are not to the contrary. In *In re Semtech Corp.*, the court *agreed* that an alleged desire to conduct a stock offering to solve a debt problem that had become an "existential threat" would not "*without more*" show a strong inference of scienter. 2025 WL 2884810, at *10 (C.D. Cal. Oct. 7, 2025). The court found scienter pleaded only through additional facts that a director suspiciously resigned just before, and the company changed its public statements soon after, the offering. *Id.* In *Nguyen v. Radient Pharms. Corp.*, 2011 WL 13141630, at *6 (C.D. Cal. Oct. 26, 2011) (which predated *Webb*), the plaintiffs pleaded that the company was "in litigation with investors for either being in default or breach of its financing obligations" and announced a clinical study that did not exist days before the company completed its "largest offering ever." *Id.* at *1-2, *6.

As Plaintiffs do not dispute, "the lack of a plausible motive certainly makes it much less likely that a plaintiff can show a strong inference of scienter." *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1108 (9th Cir. 2021).

### 4. The More Compelling Inference is Good Faith

Plaintiffs argue that "Defendants fail to offer any competing non-fraudulent inference" and disregarded the Court's duty to conduct a "holistic" review, Opp. 14, 19. Neither is true. *See* Mot. 19-20.

Plaintiffs posit that the "more plausible inference is that Sable repeatedly

misled investors and state regulators in a desperate attempt to keep the Company afloat until it could be saved by the federal government," Opp. 21, as if it is plausible that Sable knew how the federal government would later act.[8] *See Habelt v. iRhythm Techs., Inc.*, 2022 WL 971580, at *16-18 (N.D. Cal. Mar. 31, 2022) (rejecting "guiding theory of the entire complaint" that "Defendants had *knowledge* that their efforts" in an "unpredictable" regulatory process were "destined to fail"); *see also Anshen*, 2017 WL 5635021, at *3 (rejecting that "Facebook hires smart people so a mistake of this magnitude can be explained only by intentional fraud"). Plaintiffs cannot infer fraud based on the fact that Sable at times disagreed with its litigation adversaries, defended its positions, and offered the public its opinions on the expected impact of court rulings. Opp. 20-21.

"[A] comprehensive perspective … cannot transform a series of inadequate allegations into a viable inference of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1008 (9th Cir. 2009).

### C.     The Opposition Confirms No Loss Causation

The Opposition does not try to defend the Complaint's wholesale failure to map the connections between the nineteen alleged misstatements and six corrective disclosures. Nor does it address the absence of pleaded facts that certain disclosures were even publicized during the trading day for which the Complaint asserts a loss. Instead of responding to arguments why each corrective disclosure fails to meet the pleading standards, the Opposition once again merely repeats quotes from the Complaint. Opp. 22-23. Rule 9(b) demands more than *res ipsa loquitur*.

<u>May 28 Letter</u>:  While it is true that a corrective disclosure may sometimes originate from a "knowledgeable third part[y]" like a "reporter" or "whistleblower,"

---

[8] Plaintiffs argue that Sable "misled the Water Board" about "waste discharges," Opp. 18-21; ¶¶ 51-56, but the "facts alleged must support an inference of an intent to defraud the plaintiffs rather than some other group." *Rok v. Identiv, Inc.*, 2017 WL 35496, at *11 (N.D. Cal. Jan. 7, 2017). Moreover, the Complaint pleads that Sable acknowledged to the Water Board certain incorrect determinations, ¶ 56, a perfect example of the non-fraudulent "engaging with regulators" discussed in the Motion.

Opp. 22, Plaintiffs do no work to explain how the criticism of a politician meets the legal standards for loss causation.  *See, e.g.*, *In re Herbalife, Ltd. Sec. Litig.*, 2015 WL 12732428, at *7 (C.D. Cal. Mar. 27, 2015) (senator "communicating concerns about Herbalife's practices" did not "constitute a corrective disclosure").

May 28, June 3, October 15 Rulings:  Plaintiffs do not explain how temporary, forward-looking orders in litigation involving complex administrative issues made "the truth bec[o]me known" about more than a dozen alleged misstatements.  *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 790 (9th Cir. 2020).

November 4 Vote:  Recognizing that the Supervisors' vote does not qualify as a traditional disclosure, Plaintiffs instead argue that it "was a materialization of the risk of Sable's repeated dishonest interactions with regulators."  Opp. 23-24. This theory requires pleading that Defendants concealed risks—not that *disclosed* risks came to pass.  *See Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568, at *8 (N.D. Cal. June 19, 2020).   The Complaint does not allege how Sable's regulatory "strategy"—which played out in public fora—was somehow concealed.  Sable also repeatedly disclosed that it depended on "numerous other governmental authorities" approval and that it might "be unable to obtain required permits."  Ex. 8 at 457, 459. That a disclosed risk came to pass is not loss causation.

October 31 and November 3 News:  Plaintiffs ignore that the announcement of an investigation, without more, cannot serve as a corrective disclosure in the Ninth Circuit.  *See* Mot. 23-24.  They argue that a short-seller report is not barred from being a corrective disclosure, but disregard Ninth Circuit authorities rejecting loss causation allegations based on reports by self-interested short-sellers that are not plausibly perceived by the market as "revealing the falsity of [] prior misstatements." *In re BofI*, 977 F.3d at 797.  Plaintiffs do not otherwise explain how the alleged disclosure of Sable's alleged new equity raising goals corrected any prior statements.

## III.   CONCLUSION

The Complaint should be dismissed with prejudice.

Dated: January 26, 2026

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: */s/ Kristin N. Murphy*
     Kristin N. Murphy (SBN 268285)
     650 Town Center Drive, 20th Floor
     Costa Mesa, CA 92626
     Telephone: (714) 540-1235
     Email: kristin.murphy@lw.com

     Colleen C. Smith (SBN 231216)
     12670 High Bluff Drive
     San Diego, CA 92130
     Telephone: (858) 523-5400
     Email: colleen.smith@lw.com

     *Counsel for Defendants*
     *Sable Offshore Corp., James C.*
     *Flores, and Gregory D. Patrinely*

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendants Sable Offshore Corp., James C. Flores, and Gregory D. Patrinely certifies that this brief contains 12 pages, which:

    __    complies with the word limit of L.R. 11-6.1.

    X    complies with the page limit set by court order dated August 4, 2025 (Dkt. No. 10).

Dated: January 26, 2026        By: */s/ Kristin N. Murphy*
                                Kristin N. Murphy (SBN 268285)
                                650 Town Center Drive, 20th Floor
                                Costa Mesa, CA 92626
                                Telephone: (714) 540-1235
                                Email: kristin.murphy@lw.com

                                Colleen C. Smith (SBN 231216)
                                12670 High Bluff Drive
                                San Diego, CA 92130
                                Telephone: (858) 523-5400
                                Email: colleen.smith@lw.com

                                *Counsel for Defendants*
                                *Sable Offshore Corp., James C.*
                                *Flores, and Gregory D. Patrinely*